RANDOLPH, Presiding Justice,
concurring in part and in result:
¶ 44. I concur with the result reached by five other justices to reverse and render, relying heavily upon Justice Chandler’s political-question analysis — especial *1225 ly excluding judicial review of “policy choices and value determinations constitutionally committed for resolution to the halls of [the Legislature].” Ghane v. Mid-S. Inst. of Self Def. Shooting, Inc., 137 So.3d 212, 217 (Miss.2014). The substance of the issue before us today, to whom and how much money should be spent to provide services to the public, is a policy choice and value determination committed for resolution to the Legislature according to our Constitution. Miss. Const, art. 1, § 1; art. 4, § 69. “A textually demonstrable constitutional commitment of the issue to a coordinate political department” renders today’s issue a nonjusticiable political question. See McDaniel v. Cochran, 158 So.3d 992, 1003 (Miss.2014) (Randolph, P.J., concurring) (quoting Baker v. Carr, 369 U.S. 186, 217, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962)).
¶ 45. The judiciary interprets laws; it does not draft or consider legislation in the making. Miss. Const. art. 6, § 144; Orick v. State, 140 Miss. 184, 105 So. 465, 467 (1925). See also Hughes v. Hosemann, 68 So.3d 1260, 1265 (Miss.2011); Speed v. Hosemann, 68 So.3d 1278, 1280 (Miss.2011). Any attempt to conscript the judiciary into a role prescribed for the Attorney General [4] violates the separation of powers mandate of our Constitution. Miss. Const, art. 1, § 2; Miss.Code Ann. § 23-17-9 (Rev. 2007). One of the statutory interpretations at issue directs the judiciary to draft the text of a ballot title (legislation in the making) if the court finds the proposed ballot title insufficient. Such an act places serious constraints upon this Court later considering an actual controversy, ie., a constitutional challenge, should either amendment pass and become law. The drafting of a ballot title is inherently, a substantive act directed to the Attorney General prior to an amendment becoming law. It is a decision we cannot render. See Hughes, 68 So.3d at 1265.
¶ 46. That being said, the ballot title issues which precipitated this appeal expose significant shortcomings in the entire process. The ballot which will be before the electorate come November will not provide voters with the constitutional provision they are called upon to amend. Nor will the voters be provided with the actual words which would be in their Constitution, if either Measure 42 or Alternative Measure 42A is approved. Should not our law require that the voters be informed of changes to their current constitution, which either 42 or 42A might bring about?
¶ 47. Article 8, Section 201 of Mississippi’s Constitution currently reads: “The Legislature shall, by general law, provide for the establishment, maintenance and support of free public schools upon such conditions and limitations as the Legislature may prescribe.” The voters of this state will vote for or against competing proposed amendments to Article 8, Section 201 — Measure 42 and Alternative Measure 42A. However, our law provides that voters will be required to cast votes on ballot titles without seeing the actual words of the amendment they are called upon to place in their Constitution.
¶ 48. Alternative Measure 42A proposes to amend the state Constitution as follows: “The Legislature shall, by general law, provide for the establishment, maintenance and support of an effective system of free public schools.” As with 42, the voters will see only the ballot title for 42A. After today’s decision, absent any changes by the attorney general, the ballot title will *1226 read “Should the Legislature provide for the establishment and support of effective free public schools without judicial enforcement?”
¶ 49. It is argued by the proponents of Measure 42 that the ballot title formulated by the attorney general for Alternative 42A fails to indicate “the essential differences” between 42 and 42A, as required by Section 23-17-33. I agree. The differences between 42 and 42A are glaring and material. Alternative Measure 42A creates no new rights. Alternative Measure 42A keeps the responsibility of funding the state’s public schools with those responsible for the state’s budget — the Legislature, in their discretion — as opposed to the entire state government. Alternative Measure 42A, like the current Section 201 of the Mississippi Constitution, does not specifically grant courts injunctive enforcement powers, but no one seriously contests the Court’s inherent power to be the supreme arbiter of the Constitution. See Ex Parte Wren, 63 Miss.' 512, 535 (1886) (“[T]he courts are guardians of the constitution in the performance of their duty to decide causes[.]”). Another “essential difference” is Measure 42’s use of the word “efficient” versus' Alternative Measure 42A’s use of “effective.”[5] Should not the voters be provided with the distinction?
¶ 50. Some would argue that Alternative Measure 42A was prompted by proposed deficiencies in Measure 42’s ballot title.[6] Though the ballot title for Measure 42 is not at issue in this case, it is likewise problematic. Initiative Measure 42 proposes to amend the state’s Constitution to read as follows:
To protect each child’s fundamental right to educational opportunity, the State shall provide for the establishment, maintenance, and support of an adequate and efficient system of free public schools. The chancery courts of this state shall have the power to enforce this section with appropriate in-junctive relief.
Its ballot title as presently proposed reads “Should the state be required to provide for the support of an adequate and efficient system of free public schools?”
¶ 51. Without passing judgment on the wisdom or folly of Measure 42, nothing on the ballot informs voters that (1) voting for this proposed amendment creates a new right for children to an “educational opportunity;” or (2) any child’s right to an “educational opportunity” shall be enforced by a chancellor if an attorney can convince the chancellor that the amount of money budgeted for education by the Legislature fails to provide an “adequate and efficient system” (whatever that means). Nothing on the ballot informs the voter that if Measure 42 becomes law, the newly created right can be asserted against the State (which includes the judicial, executive, and legislative branches), even though control of the state’s purse strings is and has always been with the Legislature, the same magistracy of our state government given the power to “provide for the establishment, maintenance and support of free public schools.” Miss. Const, art. 8, § 201.
¶ 52. Voters are not informed that, under our existing Constitution, the Legislature has discretion in funding education — determining the amount to be spent, balancing those expenditures with the demands of other critical government services (e.g., public safety, economic de *1227 velopment/job creation, transportation, healthcare (physical and mental), inter alia). If approved, Measure 42 could require education to be funded to an unspecified level, without consideration of unknown fiscal burdens to provide other essential government services. Our present Constitution does not empower courts to determine the fiscal policies of our State, clearly a political question.
¶ 53. Measure 42 does not define “adequate and efficient.”[7] Only the Legislature has the power to collect revenue and appropriate funding for the state’s public schools. See Miss. Const, art. 4, §§ 69-70. Courts have little or no training or experience in such matters, and more importantly, have no specific constitutional authority to decide how to distribute the state’s limited resources. See Miss. Const, art. 1, § 2 (“No person or collection of persons, being one or belonging to one of these departments, shall exercise any power properly belonging to either of the others.”).
¶ 54. While Section 273 of Mississippi’s Constitution prescribes a process for amendment, it places no restrictions on the construction of any ballot title. The Legislature enacted a statute that provides ballot titles shall not exceed twenty words. Miss.Code Ann. § 23-17-9 (Rev.2007). In doing so, the Legislature placed on the attorney general a burden that the parties at oral argument conceded is a nigh impossible task — “indicate [to the voters], as clearly as possible, the essential differences in the measure” — in twenty words or less — without being argumentative. Miss. Code Ann. §§ 23-17-33, 23-17-9 (Rev. 2007). As the statute requires the differences be indicated as dearly as possible, and as all parties agree that is practically impossible, the twenty-word limit in Section 23-17-9 is unworkable, as applied in this case. Such constraints cannot fairly be imposed upon or adhered to by the Attorney General. The legislature should address this conundrum when it next reconvenes.[8]
¶ 55. Further, the ballot title for 42A is subject to multiple interpretations. It could be read as “should the Legislature provide for schools without the courts having to force them to do so.” I dare say everyone would agree the Legislature should provide free public schools without the courts forcing it to do so. But it could also be read as denying the court’s authority to enforce a constitutional amendment concerning free public schools, an interpretation that would be grievously misleading.
¶ 56. “As the highest state court, this Court has the proper authority and responsibility to interpret the Mississippi Constitution of 1890.” Barbour v. Delta Corr. Facility Auth., 871 So.2d 703, 710 (Miss.2004). See also Alexander v. Allain, 441 So.2d 1329, 1333 (Miss.1983) (“The interpretation of the constitution becomes *1228 the duty of the judicial department when the meaning of that supreme document is put in issue.”); Marbury v. Madison, 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803) (“It is emphatically the province and duty of the judicial department to say what the law is.”). If the Legislature shut down all the public schools, could this Court be asked to intervene under the current Constitution? Certainly it has the authority to do so. See Miss. Const, art. 6, § 144 (“The judicial power of the State shall be vested in a Supreme Court and such other courts as are provided for in this Constitution.”). See also Orick v. State, 140 Miss. 184, 105 So. 465, 467 (1925) (“The judicial department of every government is the rightful expositor of its laws; and emphatically of its supreme law. If, in a case depending before any court, a legislative act shall conflict with the Constitution, it is admitted, that the court must exercise its judgment on both, and that the Constitution must control the act.”). But today’s dispute does not concern a law or legislative act, but rather a proposed law. Indeed, Measure 42 was rejected by the Legislature, which proposed its own alternative (42A), both of which are no more than proposed laws-which we have previously declared in Hughes and Speed as not ripe for consideration. See Hughes v. Hosemann, 68 So.3d 1260, 1265 (Miss.2011); Speed v. Hosemann, 68 So.3d 1278, 1280 (Miss.2011).
¶ 57. While the ballot titles[9] and a summary of the fiscal analysis must appear on the ballot,[10] I find no command that only these two provisions may appear on the ballot. The Secretary of State is responsible for preparing the ballots in the upcoming election and is awaiting the outcome of this case. Is it unreasonable to reveal to each voter exactly what he or she is being asked to vote on? It might be prudent for the Secretary of- State to consider additional disclosure on the actual ballot, to illuminate the issue and assist the voters.
(1) The full text of Article 8, Section 201 of the Mississippi Constitution as it now reads:
The Legislature shall, by general law, provide for the establishment, maintenance and support of free public schools upon such conditions and limitations as the Legislature may prescribe.
(2) The full text of Initiative Measure 42:
To protect each child’s fundamental right to educational opportunity, the State shall provide for the establishment, maintenance, and support of an adequate and efficient system of free public schools. The chancery courts of this state shall have the power to enforce this section with appropriate in-junctive relief.
(3) The full text of Legislative Alternative Measure 42A:
The Legislature shall, by general law, provide for the establishment, maintenance and support of an effective system of free public schools.
The ballot should also include the constitutionally and statutorily required provisions.[11]
*1229 ¶ 58. Although the Appellees in this case claim they are objecting only to the form of Alternative Measure 42A’s ballot title, it is the substance of that ballot title to which they object. They are not claiming the shape or structure of the twenty-word statement is legally deficient. They are not complaining of the order of, the words used or claiming that the title violates the twenty-word limit. They are not complaining of the style of the statement, nor are they claiming any words have been misspelled or unduly emphasized (italicized, capitalized, bold-faced), nor are they claiming the ballot title is improperly punctuated. In sum, the complaint against Alternative Measure 42A’s ballot title is not one as to form, but is rather a complaint as to the substance therein. It is not within this Court’s authority to decide substantive issues of proposed amendments to our Constitution prior to their acceptance by the electorate.
WALLER, C.J., AND DICKINSON, P.J., JOIN THIS OPINION IN PART. • CHANDLER, J., JOINS IN PART WITH OPINION.

. Or into the role of Ballot preparation prescribed for the Secretary of State. Miss.Code Ann. § 23-15-367 (Rev.2007).

. Our armed forces are highly effective, but many times not efficient.

. The ballot title for Measure 42 was challenged in the Circuit Court of Hinds County. The challenge was denied and not appealed further to this Court.

. While the proponents of Measure 42 defined "adequate and efficient” in their initiative petition'("For purposes of the initiative, a minimum standard of contemporary adequate education is described by the funding formula of the current version of the Mississippi Adequate Education Program and an efficient education is one that will, among other things, enable Mississippi’s public school graduates to compete favorably with their counterparts in surrounding states.”), the proponent’s definitions will not be on the ballot.

. The unfeasibility of the twenty-word limitation becomes even more apparent considering the proposed textual amendment of Measure 42 is forty-seven words, Alternative 42A is only twenty-one words, and the current Constitution (Section 201) is twenty-seven words. The attorney general should not be expected to reduce a twenty-one-word amendment to twenty words, while exposing the differences between two competing proposed amendments.

.Miss. Const, art. 15, § 273(8) ("If an initiative measure proposed to the Legislature has been rejected by the Legislature and an alternative measure is passed by the Legislature in lieu thereof, the ballot titles of both such measures shall be so printed on the official ballots....”); accord Miss.Code Ann. § 23-17-37.

. Miss. Const, art. 15, § 273(6) ("A summary of each fiscal analysis shall appear on the ballot.”).

. Miss. Const, art. 15, § 273(8) ("If an initiative measure proposed to the Legislature has been rejected by the Legislature and an alternative measure is passed by the Legislature in lieu thereof, the ballot titles of both such *1229 measures shall be so printed on the official ballots that a voter can express separately two (2) preferences: First, by voting for the approval of either measure or against both measures, and, secondly, by voting for one measure or the other measure.... Substantially the following form shall be a compliance with this subsection[.]”); accord Miss. Code Ann. 23-17-37.